IN  THE  UNITED  STATES  DISTRICT  COURT
FOR  THE  SOUTHERN  DISTRICT  OF  OHIO
WESTERN  DIVISION  AT  DAYTON


HEATHER L. YORK,                                    :

                                                              Case No. 3:12-cv-188[1]

                              Plaintiff,

                                                              District Judge Timothy S. Black
                                                              Magistrate Judge Michael R. Merz

             -vs-


MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY[2],

                              Defendant.          :


## REPORT AND RECOMMENDATIONS


Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as

it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of

Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits.

The case is now before the Court for decision after briefing by the parties directed to the record

as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which

permits judicial review, 42 U.S.C. §405(g).  The Court's sole function is to determine whether

the record as a whole contains substantial evidence to support the Commissioner's decision.  The

---

[1] In her Memorandum Incorporating Statement of Facts in Support of her Statement of Specific Errors ("Statement of Specific Errors"), and in her Reply to Opposition to Statement of Errors, Plaintiff identifies the Case No. as 3:12 CV 2538 (Doc. 13, PageID 1015; Doc. 18, PageID 1047). However, the Court's docket reveals that the proper case number is 3:12-cv-188.

[2] The Court notes that on February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security.  See, http://www.ssa.gov/pressoffice In accordance with Fed.R.Civ.P. 25(d)(1) and the last sentence of 42 U.S.C. § 405(g), Carolyn W. Colvin is automatically substituted as Defendant in this action.  However, in accordance with the practice of this Court, the caption remains the same.

Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any

other substantial gainful employment which exists in the national economy.  42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an application and be an "eligible individual" as defined in the Social Security Act.  42 U.S.C. §1381a.  With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a).  To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §1382c(a)(A).  A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers.  42 U.S.C. §1382c(a)(3)(B).  Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations.  20 C.F.R. §404.1520.  First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled.  Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments;  if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded.  20 C.F.R. §404.1520(d).  Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment;  if

not, the claimant is found not disabled.  Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform.  *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed applications for SSD and SSI on April 7, 2008, and April 9, 2008, respectively alleging disability from February 21, 2008, due to autoimmune disorder and kidney problems. PageID 221-23; 224-30; 244. The Commissioner denied Plaintiff's applications initially and on reconsideration. PageID 148-50; 151-53; 154-55; 156-58. Administrative Law Judge Carol Bowen held a hearing on October 20, 2010, PageID 100-41[3], following which she determined that Plaintiff is not disabled. PageID 75-85. The Appeals Council denied Plaintiff's request for review, PageID 66-69, and Judge Bowen's decision became the Commissioner's final decision. See *Kyle v. Commissioner of Social Security,* 609 F.3d 847, 854 (6th Cir. 2010).

In determining that Plaintiff is not disabled, Judge Bowen found that Plaintiff met the insured status requirement of the Act through March 31, 2010. PageID 78, ¶ 1. Judge Bowen then found that Plaintiff has severe Wegener's granulomatosis disease with a history of acute renal failure, but that she does not have an impairment or combination of impairments that meets or equals the Listings. PageID 79, ¶ 3; PageID 80, ¶ 4. Judge Bowen found further that Plaintiff has the residual functional capacity to perform a limited range of light work. *Id.*, ¶ 5. Judge Bowen then found that Plaintiff is capable of performing her past relevant work as a violinist or a music teacher. PageID 83, ¶ 6. Judge Bowen found in the alternative that using section 202.18 of the Grid as a framework for deciding, coupled with a vocational expert's testimony, there is a

---

[3] Judge Bowen originally commenced a hearing on April 28, 2010, at which time Plaintiff requested a postponement so that she could obtain representation. PageID 97.

significant number of jobs in the economy that Plaintiff is capable of performing. PageID 84. Judge Bowen concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. PageID 85.

Plaintiff was hospitalized March 20-23, 2008, for treatment of pneumonia, hypotension, hypoproteinemia, pleural and pericardial effusion, acute renal failure, and severe hyponatremia. PageID 310-25. Plaintiff was treated in the intensive care unit of Springfield Regional Hospital and did not get any better so she was transferred to the intensive care unit of the Grant Medical Center at Ohio State University. *Id.* Plaintiff's transfer diagnoses were acute renal failure, acute severe hyponatremia, acute sepsis, hypotension, acute pneumonia, generalized anasarca, rhabdomyolysis, pleural effusion, status post thoracentesis, and pericardial effusion. *Id.*

Plaintiff was hospitalized at the Grant Medical Center March 23-April 10, 2008. PageID 331-425. At the time Plaintiff arrived at Grant, it was noted that she had a three-week history of flu-like symptoms, had been trying to take care of herself with herbs and used a variety of herbal products, when she sought emergency room treatment in Springfield, she was in a state of confusion, and that she had not responded to treatment. *Id.* It was also noted that Plaintiff was intubated and sedated and that her diagnoses were acute respiratory failure, septic shock, acute renal failure, anemia, metabolic acidosis, and pericardial effusion. *Id.* Plaintiff received treatment from several consulting physicians including a hematology/oncology consultant, nephrology consultant, pulmonary critical care consultant, infectious disease consultant, general surgery consultant, and a urology consultant. *Id.* In addition, Plaintiff underwent several clinical tests including ultrasounds and biopsies and she required a thoracentesis and peritoneal dialysis. *Id.* Plaintiff responded to the treatment provided by the several consulting physicians and was discharged in stable condition with the diagnoses of Wegener's granulomatosis, acute renal

failure, acute respiratory failure, septic shock, acute anemia, bilateral pleural effusions, and pericardial effusion. *Id.* It was noted that Plaintiff's renal failure, respiratory failure, septic shock, acute anemia, bilateral pleural effusions, and pericardial effusion had resolved. *Id.*

Plaintiff received post-hospital and continuing care from treating nephrologists Drs. Lewis and Saunders at Riverside Nephrology. PageID 427-32; 478-99; 572-621; 1002-05. Dr. Saunders reported on April 25, 2008, that he had treated Plaintiff during her hospitalization at Grant, she had a rather dramatic hospital course, that her renal function recovered to the point where peritoneal dialysis was discontinued, and that since her discharge she has slowly regained her strength. PageID 427-32. Dr. Saunders also reported that Plaintiff had a "very dramatic recovery" from her life-threatening illness, he expected she would regain renal function slowly over the next three to six months, and that she was allowed to resume her normal activities. *Id.* Plaintiff's nephrologists identified her diagnoses as Wegener's granulomatosis with acute renal failure, acute renal failure, acute respiratory failure (resolved) and pericardial effusion. *Id.* On July 9, 2008, Dr. Saunders noted that Plaintiff had felt well in general although she was slightly more fatigued. *Id.* Dr. Saunders reported on August 1, 2008, that Plaintiff's kidney function remained stable, her anemia continued to improve, and her vasculitis studies improved. *Id.* Dr. Saunders noted on December 18, 2008, that Plaintiff had been feeling well but complained of generalized fatigue, cold intolerance, and nose bleeds, he had asked her to stop taking additional supplements, and that he referred her for an ENT evaluation. *Id.* On January 29. 2009, Dr. Saunders reported that Plaintiff had evidence of worsening renal insufficiency and that she had more disease activity and on April 29, 2009, he noted that her vasculitis was improving. *Id.* Dr. Saunders reported on August 12, 2009, that Plaintiff had no new symptoms aside from fatigue, that she continued to teach violin, and that her antibody titers were in the normal range and on

December 2, 2009, Dr. Saunders reported that Plaintiff had been doing well, her only complaint was fatigue, she was playing violin for the orchestra and teaching violin two afternoons a week, she had no evidence of recurrent vasculitis, and that he did not have an explanation for her fatigue. *Id.*

The record contains Plaintiff's treatment notes from chiropractor Roger Lyss dated February 6, 2007, through September 15, 2010, and which reflect that Plaintiff received chiropractic treatment for C1-C2, T6, and L1-L2 related complaints. PageID 435-37; 500-25; 998-99. On September 23, 2008, chiropractor Lyss reported that Plaintiff had a history of kidney disease/failure, her prognosis was fair, he was supporting her nutritionally and with spinal manipulation, she was improving slowly, and that she was easily fatigued and of limited strength and susceptible to infection. *Id.*

Plaintiff was hospitalized June 16-19, 2008, for treatment of neutropenic fever. PageID 449-76. Plaintiff was treated and discharged in an improved condition. *Id.*

Plaintiff consulted with ENT specialist Dr. Das who treated her from December 8, through August 28, 2009. PageID 625-30; 747-51. Dr. Das identified Plaintiff's diagnosis as chronic sinusitis secondary to Wegener's disease and he noted on August 28, 2009, that Plaintiff's Wegener's was in remission. *Id.*

Plaintiff began consulting with Dr. Hauser of the Caring Medical and Rehabilitation facility in April, 2009, and continued to consult with him through at least July, 2010, for "support of her condition and get her allergies under control." PageID 632-746; 841-997. Dr. Hauser noted that Plaintiff had multiple environmental, food, and drug allergies, and that she had been diagnosed with Wegener's. *Id.* Dr. Hauser identified Plaintiff's diagnoses as hormone imbalance, polyarteritis nodosa, and allied conditions: Wegener's granulomatosis, gastroenteritis,

insomula unspecified, and fatigue and malaise. *Id.*  Starting on about May 9, 2009, Plaintiff's treatment by Dr. Hauser, who was located in Chicago, was accomplished primarily by way of e-mails which his staff wrote and by way of telephone calls to and from his staff. *Id.* On April 19, 2010, Dr. Hauser reported that he saw Plaintiff in 2009, for a second opinion for food allergies and fatigue, allergy testing revealed multiple food and environmental allergens, and that blood hormone testing revealed relatively severe deficiencies. *Id.* Dr. Hauser also reported that Plaintiff lacked the stamina and strength to maintain a regular full-time work schedule, she managed a regular schedule of two to three half days per week teaching music lessons and that after those periods of work she was often physical and mentally exhausted, and that although she scheduled eight to ten hours of sleep daily, she found it necessary to schedule additional naps. *Id.* Dr. Hauser noted that Plaintiff experienced lightheadedness when standing for long periods, that chronic muscle and joint pain made many activities painful to perform, and that although she performed part-time on violin with orchestras it often exacerbated her joint pain. *Id.* Dr. Hauser opined that all of Plaintiff's conditions, especially the Wegener's granulomatosis severely debilitated Plaintiff.[4] *Id.* On October 5, 2010, Dr. Hauser reported that Plaintiff had chronic fatigue and malaise and Wegener's, her prognosis was poor, she had unexplained persistent or relapsing chronic fatigue, had limited energy for the last six years which was worse in the last two years, that the onset was with her Wegener's disease, and that she had self-reported impairment in short-term memory or concentration, muscle pain, multiple joint pain, unrefreshing sleep, and post-exertional malaise lasting more than twenty-four hours. PageID 1007-14. Dr. Hauser also reported that Plaintiff was able to sit for two hours at a time, stand for one hour at a time, sit and stand/walk each for a total of four hours in an eight-hour day, she

---

[4]  Although Dr. Hauser purportedly prepared this report, there is suggestion in the record that Plaintiff initially wrote a statement for Dr. Hauser to use as the basis of his report. See PageID 843; 845. There is also indication that Plaintiff's parents were the sources of the requests for Dr. Hauser's reports. *Id.*

would need to take unscheduled breaks every three hours for thirty minutes, and that she was able to life less than ten pounds occasionally. *Id.* Dr. Hauser reported further that Plaintiff was only able to work part-time in a low stress job, and that the earliest date these restrictions applied was February, 2008. *Id.* Dr. Hauser noted that while Plaintiff had no primary psychological impairment, due to Wegener's and associated chronic fatigue she gets "brain fog", where concentration becomes difficult for extended periods, and that because of near-constant joint pain, her mood is negatively affected. *Id.*

A medical advisor (MA) testified at the hearing that Plaintiff's primary impairment is Wegener's granulomatosis, that it appeared she was in remission in April, 2010, that her only complaint was fatigue, that he agreed with Dr. Saunders' conclusion that he cannot explain her fatigue, that Plaintiff did not meet or equal the Listings, that she had reduced functional restrictions to sedentary work  during the time of onset until October or November of 2009, and that after that time she did not have severe physical limitation. PageID 104-18. The MA also testified that Wegener's can cause fatigue, but that the record indicates Plaintiff has been in remission for an extended period of time, and that throughout the record, Plaintiff consistently complained of fatigue. *Id.*

In her Statement of Errors, Plaintiff alleges that the Commissioner erred by failing to articulate valid reasons for rejecting her allegations of disabling fatigue. (Doc. 13). In support, Plaintiff essentially argues that the Commissioner failed to abide by Social Security Ruling 96-7p in that he failed to consider the "consistency" of her statements and the effect of her medication on her ability to function. PageID 1023. *Id.* This is the only error that Plaintiff has raised and therefore, she has waived any other arguments. *Ealy v. Commissioner of Social Security*, 594 F.3d 504, 513 (6th Cir. 2010).

First, Plaintiff seems to suggest that Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996) (SSR 96-7p), is a "regulation". See PageID 1023. However, that is not so. A regulation is a rule that an agency promulgates pursuant to the agency's enabling statute. See *Mayo Foundation for Medical Education and Research v. United States*, ___ U.S. ___, ___, 131 S.Ct. 704, 714 (2011). Agencies are bound by duly promulgated substantive rules, which have the force of law. *Dyer v. Secretary of Health and Human Services,* 889 F.2d 682, 685 (6th Cir. 1989), citing, *Chrysler Corp. v. Brown,* 441 U.S. 281, 301-02 (1979). SSRs, on the other hand set forth the agency's policy interpretations. See *Farmer v. Apfel,* No. 99-5041, 2000 WL 32021 at *3 (6th Cir. Jan. 6, 2000).

Social Security Rulings are "binding on all components of the Social Security Administration" and represent "precedent final opinions and orders and statements of policy and interpretations" adopted by the Commissioner. *Ferguson v. Commissioner of Social Security,* 628 F.3d 269, 272 n.1 (6th Cir. 2010)(citations omitted). In *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 549 (6th Cir. 2004), the court refrained from ruling on whether SSRs are binding on the Commissioner in the same way as Social Security Regulations, but *assumed* that they are. *Ferguson, supra* (emphasis in original).

Although SSRs and Regulations are distinguishable, as did the *Ferguson* and *Wilson* courts, this Court will assume that SSR 96-7p is binding on the Commissioner in the same way Social Security Regulations bind him.

While it is true that SSR 96-7p discusses the "consistency" of an individual's statements with respect to the individual's credibility, consistency is not the *only* factor to which SSR 96-7p refers. Indeed, the Ruling emphasizes first that, *inter alia,* "no symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's

complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical … impairment(s) that could reasonably be expected to produce the symptoms." SSR 96-7p, 1996 WL 374186 at *1.  When evaluating credibility, SSR 96-7p requires the Commissioner to consider, in addition to "consistency", the medical evidence, treatment history, other sources of information, and observations of the individual. *Id.* at *5-*8.

First, the Court notes that the record demonstrates the existence of a medically determinable physical impairment that could reasonably be expected to produce Plaintiff's complained-of fatigue, to wit: Wegener's disease.

Judge Bowen specifically noted that Plaintiff had "complaints of ongoing severe fatigue." PageID 78. So, contrary to Plaintiff's argument, the Commissioner did not fail to consider those complaints. While Judge Bowen may not have used the explicit term "consistent" in describing Plaintiff's allegations, she clearly recognized that they were "ongoing".

Plaintiff also argues that in evaluating her credibility the Commissioner erred by placing too much evidentiary weight on her activities. However, the Commissioner may consider a claimant's activities in evaluating allegations of disability. *Walters v. Commissioner of Social Security,* 127 F.3d 525, 532 (6th Cir. 1997)(citation omitted). Indeed, the Sixth Circuit has upheld an ALJ's rejection of a plaintiff's credibility where the plaintiff's activity level was inconsistent with allegations of disabling pain. See, *e.g., Cruse v. Commissioner of Social Security,* 502 F.3d 532, 542 (6th Cir. 2007).

Judge Bowen determined that Plaintiff's daily activities were inconsistent with her allegations of disabling fatigue. PageID 83. In doing so, Judge Bowen accurately described Plaintiff's self-reported activities. *Id.* For example, the record establishes that Plaintiff is

11

independent in her self-care activities, she prepares her own meals, assists with household chores, has a driver's license, drives, teaches violin lessons two afternoons a week, teaches twelve violin students each week, travels out of town to teach violin lessons, plays the violin with a symphony orchestra about eight times a year which involves three to four rehearsals the week before a performance, occasionally does yard work, occasionally runs errands, watches television, reads, goes out to eat or to the movies about twice a month, handles her own mail and bills, visits others, attends church services twice a week that last an hour and forty-five minutes, offers bible studies to people in the Hispanic community two to four hours a week, travels to Chicago every three to six months to consult with Dr. Hauser, and travels to Georgia about three times a year.  PageID 119-27.  This Court agrees with the Commissioner's determination that Plaintiff's numerous and varied activities are inconsistent with her allegations of disabling fatigue.

Judge Bowen also found that Plaintiff's allegations of disabling fatigue were not supported by the medical evidence. PageID 81-83. In doing so, Judge Bowen determined that the opinions of Dr. Hauser and of Plaintiff's chiropractor were not entitled to controlling or even any special weight. Judge Bowen did not err in that regard.

First, as noted above, Dr. Hauser provided treatment to Plaintiff primarily by way of e-mails written by his staff and by way telephone calls made by his staff. Therefore, it is questionable, at best, as to whether Dr. Hauser even qualifies a treating source for purposes of the Act. See *Cruse v. Commissioner of Social Security*, 502 F.3d 532, 540 (6th Cir.  2007)("A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'")(citation omitted). Second, a review of Dr. Hauser's notes reveals that they are

primarily a recitation of Plaintiff's subjective complaints and contain very few, if any, independent clinical findings. Finally, Dr. Hauser's opinion is inconsistent not only with Plaintiff's self-reported activities, *supra,* but also with Dr. Saunder's findings, the MA's testimony, and the reviewing physicians' opinions. See PageID 143-44; 145-46; 527. Accordingly, Judge Bowen had adequate bases for according little, if any, weight to Dr. Hauser's opinion. *See, Kirk v. Secretary of Health and Human Services,* 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983) (while it is true that a treating physician's opinion is to be given greater weight than that of either a one-time examining physician or a non-examining medical advisor, that is only appropriate if the treating physician supplies sufficient medical data to substantiate that opinion); *Bogle v. Sullivan,* 998 F.2d 342, 347-48 (6th Cir. 1993) (the Secretary is not bound by the treating physician's opinions and such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence)(citation omitted); *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284, 287 (6th Cir. 1994)(the Secretary is not bound by treating physicians' opinions especially when there is substantial medical evidence to the contrary)(citations omitted).

As to Plaintiff's treating chiropractor, citing 20 C.F.R. §§ 404.1513(a) and 416.913(a), Judge Bowen properly noted that a chiropractor is not an acceptable medical source. PageID 82. Nevertheless, Judge Bowen considered the chiropractor's opinion and properly determined that Plaintiff's renal issues were outside the area of expertise of a chiropractor and therefore the chiropractor's opinion was not entitled to any special weight. *Id.* This Court cannot say that under these circumstances, the Commissioner erred by rejecting Plaintiff's chiropractor's opinion.

13

The Court notes that Dr. Saunders' office notes do not support Plaintiff's allegations of disabling fatigue. Specifically, Dr. Saunders reported in April, 2008, that Plaintiff had made a "very dramatic recovery" from her life-threatening illness and that she would regain her renal function over the next three to six months. In addition, Dr. Saunder's office notes reflect that over time, while Plaintiff complained of fatigue which he (Dr. Saunders) could not explain, Plaintiff was feeling well.   Finally, Dr. Saunders noted that Plaintiff's laboratory findings continued to show that Plaintiff's condition remained stable and that her Wegener's disease was in remission.

This Court concludes that the Commissioner properly evaluated Plaintiff's credibility pursuant to SSR 96-7p, the Regulations, and controlling Sixth Circuit law.

The Court's duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence.  *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982).  The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939).   The Commissioner's decision in this case is supported by such evidence.

 It is therefore recommended that the Commissioner's decision that Plaintiff is not disabled be affirmed.

March 4, 2013.                                                     s/ *Michael R. Merz*
                                                                      United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).